**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

| | | |
|---|---|---|
| **JEFFREY THOMAS POE,** | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 2:14-15940** |
| | ) | |
| **CAROLYN. W. COLVIN,** | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| **Defendant.** | ) | |

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's application for Disability Insurance Benefits (DIB), under Title II of the Social Security Act, 42 U.S.C. §§ 401-433. By Standing Order entered May 8, 2014 (Document No. 4.), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit Proposed Findings of Fact and Recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court are the parties' cross-Motions for Judgment on the Pleadings. (Document Nos. 11 and 12.)

The Plaintiff, Jeffrey Thomas Poe (hereinafter referred to as "Claimant"), filed an application for DIB on February 9, 2011 (protective filing date), alleging disability as of January 1, 2011, due to back pain, abdominal pain, right hip problems, and previous lymphoma cancer.[1] (Tr. at 10, 137, 138-44, 164, 168.) The claim was denied initially and upon reconsideration. (Tr. at 10, 70-71, 74-76, 86-88.) On August 4, 2011, Claimant requested a hearing before an Administrative Law Judge (ALJ). (Tr. at 10, 89-90.) A hearing was held on January 14, 2013, before the Honorable William R. Paxton. (Tr. at 10, 26-51.) By decision dated January 24, 2013, the ALJ determined that Claimant

---

[1] On his form Disability Report - Appeal, dated August 4, 2011, Claimant alleged that his back and hip pain had increased and that he had limited mobility. (Tr. at 201.)

was not entitled to benefits. (Tr. at 10-21.) The ALJ's decision became the final decision of the Commissioner on March 21, 2014, when the Appeals Council denied Claimant's request for review. (Tr. at 1-3.) Claimant filed the present action seeking judicial review of the administrative decision on May 7, 2014, pursuant to 42 U.S.C. § 405(g). (Document No. 2.)

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(I), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520, 416.920 (2013). If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c), 416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. 20 C.F.R. §§ 404.1520(e), 416.920(e). By satisfying inquiry four, the claimant establishes a prima facie case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981). The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's

2

remaining physical and mental capacities and claimant's age, education and prior work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f) (2013). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he had not engaged in substantial gainful activity since the alleged onset date, January 1, 2011. (Tr. at 12, Finding No. 2.) Under the second inquiry, the ALJ found that Claimant suffered from "disc disease of the thoracic and lumbar spine, old compression fracture of the thoracic spine, status post umbilical hernia repair, status post treatment for non Hodgkin's lymphoma of the right neck, carpal tunnel syndrome and obesity," which were severe impairments. (Tr. at 12, Finding No. 3.) At the third inquiry, the ALJ concluded that Claimant's impairments did not meet or equal the level of severity of any listing in Appendix 1. (Tr. at 16, Finding No. 4.) The ALJ then found that Claimant had the residual functional capacity for sedentary work, as follows:

> [C]laimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) except he can never climb ladders, ropes or scaffolds. He can occasionally climb stairs and ramps, balance, stoop, kneel, crouch and crawl. He must avoid concentrated exposure to extreme cold, extreme heat, wetness, humidity, vibration, and hazards, such as machinery and heights. He requires a sit/stand option. He can sit for 30 minutes at a time, and he can stand for 30 minutes at a time. He is limited to frequent handling, fingering and feeling with the dominant right hand.

(Tr. at 16, Finding No. 5.) At step four, the ALJ found that Claimant was unable to perform his past relevant work. (Tr. at 20, Finding No. 6.) On the basis of testimony of a Vocational Expert ("VE") taken at the administrative hearing, the ALJ concluded that Claimant could perform jobs such as a shipping/receiving router, supply clerk, and surveillance monitor/stationary guard, at the unskilled, sedentary level of exertion. (Tr. at 20-21, Finding No. 10.) On this basis, benefits were denied. (Tr.

3

at 21, Finding No. 11.)

Scope of Review

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Nevertheless, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is supported by substantial evidence.

Claimant's Background

Claimant was born on January 8, 1965, and was 48 years old at the time of the administrative hearing on January 14, 2013. (Tr. at 20, 138.) The ALJ found that Claimant had at least a high school education and was able to communicate in English. (Tr. at 20, 31, 167, 169.) In the past, he worked as a shipper/melter, shipper/receiver, and oil/tire changer. (Tr. at 20, 33-36, 169, 183-90.)

 The Medical Record

The Court has considered all evidence of record, including the medical evidence and will summarize it and discuss it below in relation to Claimant's arguments.

4

Prior to January 1, 2011, the alleged onset date, the medical record demonstrates that Claimant tested positive for Tinel's and Phalen's signs and was diagnosed with carpal tunnel syndrome ("CTS") of the left hand on October 22, 2008. (Tr. at 294.) On December 7, 2008, he was diagnosed with bilateral CTS. (Tr. at 314.) Dr. I. Derakhshan, M.D., conducted an EMG and nerve conduction studies, which revealed severe bilateral CTS that required immediate surgical attention. (Tr. at 330.) Claimant underwent umbilical hernia repair on April 28, 2010. (Tr. at 223-24.) Additionally, he was diagnosed by Dr. Nik M. Shah, M.D., with large B-cell non-Hodgkin's lymphoma for which he underwent six cycles of chemotherapy and radiation therapy. (Tr. at 232, 267-68, 273-75, 276-85, 286.) On December 29, 2009, Dr. Shah reported that Claimant had "achieved a complete remission of his disease." (Tr. at 287.)

Following his alleged onset date, the medical evidence demonstrates that Claimant presented to Morah Hughes Health Center ("Morah Hughes") on February 27, 2011, for complaints of right hip, leg, and stomach pain. (Tr. at 339-40, 363-64.) Claimant denied any recent injury but reported that he broke his back 20 years ago. (Tr. at 339, 363.) Physical exam revealed muscle spasm and tenderness of the lower back. (Tr. at 339-40, 363-64.) On February 28, 2011, x-rays of Claimant's lumbar spine revealed mild compression deformity of the superior end plate of T12, either Schmorl's nodes or early compression deformity of the superior end plate of T11 and L1, and mild degenerative changes at L5-S1. (Tr. at 342, 374.) The x-rays of his right hip were normal. (Id.)

On March 5, 2011, a MRI of Claimant's lumbar spine revealed an old T12 compression fracture, Schmorl's nodes at T11 and L-1, mild left exit neural foraminal narrowing at L4-5, and no disc herniation or central spinal stenosis. (Tr. at 375.) The thoracic MRI demonstrated an old T12 compression fracture with Schmorl's node involving the T11 vertebral body; multi-level disc bulging involving the thoracic spine without evidence of disc herniation or spinal stenosis, most

5

severe at the T6-7, T7-8, and T8-9 levels; and either disc protrusion or small disc herniations involving the lower cervical intervertebral disc spaces. (Id.)

On April 27, 2011, Dr. Rakesh Wahi, M.D., performed a consultative examination at the request of the State agency disability determination service. (Tr. at 347-54.) Claimant reported that he underwent hernia repair and had no further problems. (Tr. at 347.) He indicated that he was diagnosed with lymphoma on the neck for which he underwent chemotherapy and radiation, with no recurrence. (Tr. at 348.) He remains under treatment for that condition. (Id.) Claimant reported bilateral CTS for which he expected to have surgery. (Id.) Finally, Claimant reported hip and back pain with radiation to the right leg. (Tr. at 347.) He described the pain as sharp to occasional dull pain that occurred frequently. (Id.) He indicated that if he sat in excess of one hour, his foot went numb. (Id.) He alleged an ability to walk only short distances, due to pain and shortness of breath. (Id.) Claimant reported constant back pain, rated at a level four to seven out of ten. (Id.) He indicated that he was not able to mow the lawn or perform other physical activities. (Tr. at 348.)

On physical exam, Dr. Wahi noted that Claimant's shortness of breath limited him from activities rather than his back pain, per his report. (Tr. at 349.) Respiratory exam was normal. (Tr. at 350.) Claimant presented with a normal gait and station; was able to get on and off the exam table without difficulty; was able to squat and walk on his heels and toes; had normal sensation and reflexes; had normal range of motion of his shoulders, elbows, wrists, hips, knees, and ankles bilaterally; and was able to extend and oppose his fingers and make a fist bilaterally. (Id.) Claimant had some limitation of movement of the right hip. (Id.) Dr. Wahi noted increased lumbar lordosis with tenderness over the lumbar spine but normal cervical range of motion. (Id.) Straight leg raising test was positive in both sitting and supine positions. (Id.)

Dr. Wahi assessed lymphoma of the neck in remission and a history of hernias with no signs

of recurrence. (Tr. at 350.) Dr. Wahi also assessed degenerative joint disease involving the lumbar spine, which prevented Claimant "from doing strenuous physical activity." (Id.)

On May 3, 2011, Rebecca Lewis-Skidmore, a single decision maker ("SDM") completed a form Physical RFC Assessment. (Tr. at 62-69.) Ms. Lewis-Skidmore opined that Claimant was capable of performing light exertional level work with occasional postural limitations, except that he never could comb ladders, ropes, or scaffolds. (Tr. at 63-64.) She further opined that Claimant should avoid concentrated exposure to temperature extremes, wetness, humidity, vibration, and hazards such as machinery and heights. (Tr. at 66.) She noted Claimant's activities to have included feeding pets, preparing simple meals, vacuuming and doing laundry, watching tv, and fishing. (Tr. at 67.) In reaching her opinion, Ms. Lewis-Skidmore reviewed Dr. Wahi's examination report and x-rays of Claimant's lumbar spine. (Tr. at 69.) On June 29, 2011, Dr. Fulvio R. Franyutti, M.D., reviewed the medical evidence of record and affirmed Ms. Lewis-Skidmore's assessment as written. (Tr. at 355.)

Dr. Mike McIntosh, M.D., conducted a physical examination for the State's Department of Health and Human Resources ("DHHR"), on June 29, 2012. (Tr. at 366-67.) Claimant reported severe back pain and a history of a broken back and lymphoma. (Tr. at 366.) Dr. McIntosh indicated that all systems reviewed were negative. (Tr. at 366-67.) Despite any positive findings, Dr. McIntosh prescribed Mobic 7.5. (Tr. at 367-68.) On a form "Physician's Summary," Dr. McIntosh reported to DHHR that Claimant was diagnosed with "life long" degenerative lumbar back disease and chronic back pain, which carried a poor prognosis. (Tr. at 357, 369.) He opined that Claimant was unable to "work in a job that requires physical labor." (Id.)

On November 16, 2012, Claimant again presented to Dr. McIntosh, but only to have his disability papers completed. (Tr. at 376-77.) Dr. McIntosh completed a form Medical Assessment

7

of Ability to Do Work-Related Activities (Physical), on which he opined that Claimant was "unable to work" because "minimal activity causes extreme pain and disability." (Tr. at 360.) He opined that Claimant was able to lift or carry no more than ten pounds due to weakness and pain in his lumbar and thoracic spine. (Tr. at 358.) He indicated that Claimant was able to stand or walk for 30 minutes due to increased lumbar spine pain and sit for one hour due to increased pain when sitting. (Tr. at 358-59.) He further opined that Claimant never could perform postural activities because of severe pain and weakness in his lumbar and thoracic spine. (Tr. at 359.) Additionally, he opined that Claimant should avoid heights, humidity, and vibrations. (Id.) Despite an absence of positive findings on his sole examination of Claimant on June 29, 2012, Dr. McIntosh reported that Claimant had a restricted range of motion in his thoracic, cervical, and lumbar spine and that his upright gait was limited. (Tr. at 360.) Finally, Dr. McIntosh opined that Claimant's fine motor skills were limited to slow action and that his coordination was poor. (Id.) He assessed limited ability to perform handling and fingering but unlimited ability to feel. (Id.) Nevertheless, in reporting the frequency of such limitations, Dr. McIntosh indicated that Claimant was able to reach, handle, and finger constantly and could feel occasionally. (Id.) He concluded that Claimant's overall health was poor and that a proper diet and exercise would help his conditions. (Tr. at 361.) He confirmed that he examined Claimant only once and that a more thorough evaluation could be done by an occupational specialist. (Tr. at 362.)

Claimant's Challenges to the Commissioner's Decision

Claimant alleges that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to contact Dr. Michael McIntosh, M.D., for clarification of his medical expert opinion. (Document No. 11 at 8-9.) Claimant asserts that pursuant to 20 C.F.R. § 404.1512(c), when a medical source report contains a conflict or ambiguity that must be resolved, an ALJ is

required to seek additional evidence or clarification from the medical source. (Id. at 8.) Claimant notes that the ALJ gave little weight to Dr. McIntosh's opinion, but asserts that the ALJ imposed manipulative limitations in his RFC that were based on Dr. McIntosh's opinion. (Id.) Dr. McIntosh, however, indicated in his opinion that Claimant possessed manipulative limitation in handling and fingering, but then indicated by circling on the form that Claimant was able to do both functions. (Id. at 9.) Dr. McIntosh further reported that Claimant's motor skills were limited to slow and that his coordination was poor but that he had unlimited ability to feel but circled that he was limited to occasional feeling. (Id.) Claimant asserts that Dr. McIntosh most likely misinterpreted the questions on the form but that the ALJ should have contacted him for clarification, especially given the objective evidence that demonstrated severe bilateral CTS with associated symptoms. (Id.)

In response, the Commissioner asserts that Claimant's record was developed fully and the ALJ articulated several reasons for his having declined to accept Dr. McIntosh's extreme limitations. (Document No. 12 at 9-14.) The Commissioner asserts that the ALJ was not required to recontact Dr. McIntosh because the record contained sufficient evidence for the ALJ to make his decision. (Id. at 12.) The Commissioner contends that the ALJ could not have been persuaded by Dr. McIntosh's medical opinion, given that his one treatment note revealed only positive findings and contradicted the other evidence of record. (Id.) Claimant's examinations in February and April 2011, and in June 2012, failed to reveal any significant findings. (Id. at 13.) Specifically, he had normal grip strength. (Id.) The Commissioner points out that Dr. McIntosh only was a one-time examiner, and therefore, his opinion was not entitled controlling weight. (Id.)Accordingly, the Commissioner asserts that while Claimant provided evidence of his history, treatment, and condition, he failed to produce evidence of the severity required to preclude all work activity. (Id. at 14.)

Analysis.

Claimant asserts that the ALJ erred in failing to recontact Dr. McIntosh for clarification of his medical opinion. (Document No. 11 at 8-9.) The Commissioner asserts that the record was developed fully and to the extent there was an inconsistency in Dr. McIntosh's opinion, the ALJ was not required to recontact Dr. McIntosh because the evidence of record was sufficient for the ALJ to make a decision. (Document No. 12 at 12-14.) The duty to recontact a medical source is triggered when the evidence is insufficient or inconsistent. 20 C.F.R. § 1520b (2013). Evidence is considered insufficient when it lacks all the information the ALJ needs to make his decision. Id. Likewise, evidence is inconsistent when "it conflicts with other evidence, contains an internal conflict, is ambiguous, or when the medical evidence does not appear to be based on medically acceptable clinical or laboratory diagnostic techniques." Id. When the evidence is inconsistent, the ALJ weighs the relevant evidence to determine whether the claimant is disabled based on the evidence he possesses. 20 C.F.R. § 1520b(b). When the evidence is consistent but insufficient, the ALJ will determine the best way to resolve the insufficiency or inconsistency depending on the nature of the insufficiency or inconsistency. 20 C.F.R. § 1520b(c). The ALJ may recontact the medical source, request additional existing records, refer the claimant for a consultative examination, or ask the claimant or others for additional information. 20 C.F.R. § 1520b(c)(1)-(4).[2]

The ALJ found that Claimant's allegations of disabling CTS were not supported by the record. (Tr. at 17.) The records preceding Claimant's alleged onset date of January 1, 2011, reveal

_____

[2] Claimant relies on 20 C.F.R. § 1512(e) in asserting that the ALJ should have recontacted Dr. McIntosh. This code section, however, was eliminated by the Commissioner, effective March 26, 2012. Under the new Regulation, 20 C.F.R. § 1520b, the ALJ no longer has an obligation to recontact a medical source. Rather, the ALJ, in his discretion, will determine the best way to resolve any inconsistency or insufficiency, which may include recontacting a medical source if the ALJ sees fit. 20 C.F.R. § 1520b(c).

that from June through December 2008, Claimant reported bilateral hand and arm numbness and an EMG and nerve conduction study revealed severe bilateral CTS which required surgery. (Tr. at 14, 294, 314, 330.) After 2008, however, the record is void of any significant findings or complaints related to Claimant's CTS. Although Claimant alleged at the hearing numbing pain, difficulty gripping and holding onto objects, and performing fine manipulation, Dr. Wahi's consultative examination of April 25, 2011, revealed normal range of bilateral shoulder, elbow, and wrist motion; intact bilateral upper extremity strength and grip strength; and an ability to make a fist and extend and oppose his fingers. (Tr. at 17, 349.) As the ALJ noted, Claimant failed to undergo CTS release and was not taking any prescription medications. (Id.) Moreover, Claimant reported in April 2011, that his hobbies included hunting, fishing, and playing video games, which activities were inconsistent with complaints of severe CTS. (Tr. at 17, 348.) Claimant also reported on a form Function Report, dated March 11, 2011, that he was able to care for his personal needs, prepare simple meals, feed his pets, weed eat, run a chainsaw, vacuum, do laundry, drive, shop, pay bills, and fish. (Tr. at 19, 175-82.) Additionally, Claimant's examination in February 2011, and Dr. McIntosh's examination in June 2012, were unremarkable for significant findings related to his CTS. (Tr. at 12, 17, 339-40, 363-64, 366-67.) The ALJ's decision therefore, that the evidence failed to support the severity of Claimant's symptoms is supported by substantial evidence.[3]

---

[3] A two-step process is used to determine whether a claimant is disabled by pain or other symptoms. First, objective medical evidence must show the existence of a medical impairment that reasonably could be expected to produce the pain or symptoms alleged. 20 C.F.R. §§ 404.1529(b) and 416.929(b) (2013); SSR 96-7p; *See also, Craig v. Chater*, 76 F.3d 585, 594 (4th Cir. 1996). If such an impairment is established, then the intensity and persistence of the pain or symptoms and the extent to which they affect a claimant's ability to work must be evaluated. Id. at 595. When a claimant proves the existence of a medical condition that could cause the alleged pain or symptoms, "the claimant's subjective complaints [of pain] must be considered by the Secretary, and these complaints may not be rejected merely because the severity of pain cannot be proved by objective medical evidence." *Mickles v. Shalala*, 29 F.3d 918, 919 (4th Cir. 1994). Objective medical evidence of pain should be gathered and considered, but the absence of such evidence is not determinative. *Hyatt v. Sullivan*, 899 F.2d 329, 337 (4th Cir. 1990). A claimant's symptoms, including pain, are considered to diminish her capacity to work to the extent that alleged functional limitations are reasonably

consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4) (2013). Additionally, the Regulations provide that:

> [w]e will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your treating, examining, or consulting physician or psychologist, and observations by our employees and other persons. . . . Factors relevant to your symptoms, such as pain, which we will consider include:
>> (i) Your daily activities;
>> (ii) The location, duration, frequency, and intensity of your pain or other symptoms.
>> (iii) Precipitating and aggravating factors;
>> (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms;
>> (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms;
>> (vi) Any measures you use or have used to relieve your pain or other symptoms (e.g., lying flat on your back, standing for 15 or 20 minutes every hour, sleeping on a board, etc.); and
>> (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

20 C.F.R. §§ 404.1529(c)(3) and 416.929(c)(3) (2013).

SSR 96-7p repeats the two-step regulatory provisions:

> First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s)--i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques--that could reasonably be expected to produce the individual's pain or other symptoms. * * * If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
> Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p, 1996 WL 374186 (July 2, 1996). SSR 96-7p specifically requires consideration of the "type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms" in assessing the credibility of an individual's statements. Significantly, SSR 96-7p requires the adjudicator to engage in the credibility assessment as early as step two in the sequential analysis; i.e., the ALJ must consider the impact of the symptoms on a claimant's ability to function along with the

The ALJ gave little weight to Dr. McIntosh's opinion as it was inconsistent with the objective evidence of record, including his own examination and Claimant's reported daily activities. (Tr. at 19-20.) The ALJ noted that although Dr. McIntosh indicated positive medical findings on his form opinion, his actual examination notes failed to reveal any evidence of positive medical findings. (Tr. at 20.) The ALJ concluded that Dr. McIntosh's opinions were based on Claimant's subjective complaints, and that Claimant was not credible entirely. (Tr. at 20.) The ALJ acknowledged that Dr. McIntosh's opinion contained an inconsistency. (Tr. at 19-20.) The ALJ stated that Dr. McIntosh "felt the [C]laimant had limited ability to handle (gross manipulation) and finger (fine manipulation) and that he had unlimited ability to feel (skin receptors); however, Dr. McIntosh further opined the [C]laimant could constantly reach, handle and finger and that he could occasionally feel." (Tr. at 19-20.) Dr. McIntosh's opinion thus, was inconsistent, internally. Nevertheless, the other substantial evidence of record was sufficient such that the ALJ was able to make a decision without recontacting Dr. McIntosh. Claimant's reported activities, Dr. Wahi's evaluation, Dr. McIntosh's one-time examination in June 2012, and the absence of surgical or pharmacological intervention, support the ALJ's finding that Dr. McIntosh's extreme limitations in

---

objective medical and other evidence in determining whether the claimant's impairment is "severe" within the meaning of the Regulations. A "severe" impairment is one which significantly limits the physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1520(c) and 416.920(c).

Craig and SSR 96-7p provide that although an ALJ may look for objective medical evidence of an underlying impairment capable of causing the type of pain alleged, the ALJ is not to reject a claimant's allegations solely because there is no objective medical evidence of the pain itself. Craig, 76 F.3d at 585, 594; SSR 96-7p ("the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record"). For example, the allegations of a person who has a condition capable of causing pain may not be rejected simply because there is no evidence of "reduced joint motion, muscle spasms, deteriorating tissues [or] redness" to corroborate the extent of the pain. Id. at 595. Nevertheless, Craig does not prevent an ALJ from considering the lack of objective evidence of the pain or the lack of other corroborating evidence as factors in his decision. The only analysis which Craig prohibits is one in which the ALJ rejects allegations of pain solely because the pain itself is not supported by objective medical evidence.

handling and fingering were not supported by the substantial evidence of record. Additionally, Dr. Franyutti, a state agency medical expert, did not assess any manipulative limitations. (Tr. at 19, 62-69, 355.) Given an absence of any significant physical findings and in view of Claimant's reported symptoms of CTS, the ALJ limited him to performing only frequent handling, fingering, and feeling of the dominant right hand. (Tr. at 16.) Claimant asserts that the ALJ improperly relied on Dr. McIntosh's opinion, which he accorded little weight, in assessing a RFC that included a limitation to frequent handling, fingering and feeling with the dominant right hand. In view of the evidence of record, it is clear that the ALJ relied upon the combination of the absence of significant findings regarding Claimant's CTS and Claimant's reported symptoms, in assessing his RFC. Accordingly, the undersigned finds that the ALJ's assessment of Claimant's credibility and assessment of Claimant's RFC regarding his CTS and Dr. McIntosh's opinions is supported by substantial evidence of record. The undersigned finds that the ALJ's decision to give little weight to Dr. McIntosh's opinion is supported by substantial evidence and that the ALJ was not required to recontact Dr. McIntosh as the evidence of record was sufficient for him to make a decision.[4]

---

[4] Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2011). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency, (5) specialization, and (6) various other factors. Additionally, the Regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(I) and 416.927(d)(2)(I) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty). Unless the ALJ gives controlling weight to a treating source's opinion, the ALJ must explain in the decision the weight given to the opinions of state agency medical or psychological

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Court confirm and accept the foregoing findings and **RECOMMENDED** that the District Court **DENY** the Plaintiff's Motion for Judgment on the Pleadings (Document No. 11.), **GRANT** the Defendant's Motion for Judgment on the Pleadings (Document No. 12.), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from the Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have three days (mailing/service) and then fourteen days (filing of objections) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made,

---

consultants. 20 C.F.R. §§ 404.1527(f)(2)(ii) and 416.927(f)(2)(ii) (2013). The ALJ, however, is not bound by any findings made by state agency medical or psychological consultants and the ultimate determination of disability is reserved to the ALJ. Id. §§ 404.1527(f)(2)(I) and 416.927(f)(2)(I).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Nevertheless, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996); see also, 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2) (2013). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the Court must not abdicate its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational. Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974).

If the ALJ determines that a treating physician's opinion should not be afforded controlling weight, the ALJ must then analyze and weigh all the evidence of record, taking into account the factors listed in 20 C.F.R. §§ 404.1527 and 416.927(d)(2)-(6).

15

and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155, 106 S.Ct. 466, 475, 88 L.Ed.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.Ed.2d 933 (1986); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.Ed.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Johnston, and this Magistrate Judge.

The Clerk is directed to file this Proposed Findings and Recommendation and to send a copy of the same to counsel of record.

Date: August 25, 2015.

R. Clarke VanDervort
United States Magistrate Judge